# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH FERGUSON,**

    Plaintiff,

v.                                      Case No. 19-CV-55

**RYAN MCDONOUGH,**

    Defendant.

## ORDER DENYING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Joseph Ferguson, who is representing himself in this 42 U.S.C. § 1983 action, alleges that the defendant used excessive force against. Before me now are the parties cross-motions for summary judgment. (ECF Nos. 39 and 51.) For the reasons discussed below, I will deny the parties' cross-motions for summary judgment.

## FACTS

At the time relevant to this lawsuit, Ferguson was a Wisconsin resident. (ECF No. 41, ¶ 1.) McDonough was a police officer with the Kenosha Police Department. (*Id.*, ¶ 5.)

On July 9, 2018, McDonough went to 6100 24th Avenue in response to a report of disorderly conduct. (*Id.*, ¶ 6.) According to the individual who made the report, there was a woman inside the apartment (Cloey Rupp-Kent) who was "causing problems." (*Id.*, ¶¶ 7-8.) McDonough spoke to Rupp-Kent and saw bruises on her leg

and lower neck. (*Id.*, ¶ 9.) McDonough also saw redness on the left side of Rupp-Kent's face. (*Id.*, ¶ 10.) At that time, Rupp-Kent was the only person at the apartment. (*Id.*, ¶ 11.)

Rupp-Kent told McDonough that she and Ferguson had been fighting earlier in the day. (*Id.*, ¶ 12.) Ferguson left for a few hours and came back belligerent. (*Id.*) Rupp-Kent said that Ferguson punched her in the face, knocked a phone out of her hands, laid on top of her on the bed, and pointed a knife at her chest making vague threats to stab her. (*Id.*, ¶ 13.) Ferguson had also kicked the air conditioning unit out of the window. (*Id.*, ¶ 12.)

McDonough went to his squad car to complete paperwork on the incident. (*Id.*, ¶¶ 14-16.) He found out that Ferguson was on probation for robbery. (*Id.*, ¶ 14.) He also found out that Ferguson had his driving privileges revoked and that he drove a Chrysler 300. (*Id.*, ¶¶ 14-15.) McDonough also saw Ferguson's booking photo. (*Id.*, ¶ 14.)

As McDonough was completing the paperwork in his squad car, he saw Ferguson drive past him. (*Id.*, ¶ 17.) McDonough followed the car. (*Id.*, ¶¶ 18-22.) Ferguson turned two corners and pulled over. (*Id.*, ¶¶ 21-22.) Ferguson states that he was in front of his mother's house, so he parked on the side of the road and started to get out of his car. (ECF No. 54, ¶ 22.) McDonough activated his lights and yelled at Ferguson to stay in the car several times. (ECF No. 41, ¶¶ 23-27.) The parties have different accounts of what happened next. (*See* ECF Nos. 41, 47, 54.)

According to Ferguson, he "ignored" McDonough's verbal order to stay in the car and got out of his car to ask McDonough why he was being pulled over. (*See* ECF No. 47, ¶ 16; ECF No. 54, ¶¶ 25-28.) McDonough responded, "you're under arrest." (ECF No. 47, ¶ 16.) McDonough then aggressively walked up to him, "shoved" him, and gave him two contradicting commands: (1) to place his hands on-top of the car; and (2) to place his hands behind his back. (*Id.*, ¶ ¶18-19.) Ferguson says he couldn't do both, so he had "one hand on top of the car and one behind my back." (ECF No. 54, ¶ 33.) Ferguson says that McDonough was "pushing him around" and was so rough during the struggle that he pulled off all of Ferguson's clothes. (ECF No. 47, ¶¶ 20-21.) Ferguson states that he was not resisting arrest and he had both hands in the air when McDonough unnecessarily tased him. (*Id.*, ¶ 22.)

According to McDonough, he approached Ferguson and attempted to turn Ferguson toward the car to handcuff him behind his back. (ECF No. 41, ¶¶ 32-34.) Ferguson pulled one arm free and continued to resist arrest. (*Id.*) McDonough told him to stop resisting twice but Ferguson continued to resist. (*Id.*, ¶ 35.) McDonough attempted to "decentralize" Ferguson by taking him to the ground, but Ferguson continued to resist. (*Id.*, ¶¶ 36-37.) During the struggle, Ferguson's clothes came off and he was able to stand up. (*Id.*, ¶ 38.) McDonough says that he was concerned about his safety because Ferguson was actively resisting, he didn't have backup officers to help him, and he knew that Ferguson had recently threatened Rupp-Kent with a knife. (*Id.*, ¶¶ 39-40.) Once McDonough was able to stand up, he deployed his taser

3

once for five seconds to get Ferguson under control. (*Id*., ¶¶ 41-45.) Ferguson fell to the ground and backup arrived to help handcuff him. (*Id*., ¶¶ 46-47.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 996 (7th Cir. 2020). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court's sole function is to determine whether sufficient evidence exists to support a verdict in the non-movant's favor. *Id.* at 248-49 Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Id.* at 249-51.

## *ANALYSIS*

Ferguson claims that McDonough use of the taser on him was excessive force. A claim that a law enforcement officer used excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id.* (quoting *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). The reasonableness of an officer's actions must be determined by

4

examining the "specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus*, 624 F.3d at 861–62 (quoting *Graham v. Connor*, 490 U.S. 386, 396, (1989)). "[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Id.* at 862.

Both parties assert that the videotape of the incident support granting summary judgment in their favor. I have reviewed the videotape and conclude that the videotape does not settle the parties' dispute. Consistent with Ferguson's version of events, one reasonable interpretation of the videotape is that at the point that McDonough tased Ferguson, he was standing next to his car with his hands in the air. A reasonable jury could, thus, conclude that the use of the taser was unnecessary and unreasonable.

Another reasonable interpretation of the video, consistent with McDonough's version of events, is that although Ferguson was not physically resisting at the time that McDonough tased him, Ferguson was struggling moments before McDonough deployed his taser. Accordingly, a reasonable jury could agree that McDonough's deployment of the taser was reasonable.

Either interpretation turn on considering the totality of the circumstances, drawing inferences from the video, and making credibility determinations as to each

5

party's explanation of what they were doing and thinking during the incident. This is precisely what jury trials are for.

McDonough also asserts qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of showing that: (1) the facts, viewed in the light most favorable to the plaintiff, establish a violation of a constitutional right; and (2) the right violated was clearly established at the time of use of force. *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017).

As discussed above, one view of the evidence favorable to Ferguson supports that he was at most passively resisting. *See Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016) (failure to obey command to get on the ground was passive resistance*); see Abbott v. Sangamon Cnty*, 705 F.3d 706, 730 (7th Cir. 2013)(failure to turn over on the ground was not active resistance); *see Smith v. Ball State Univ.*, 295 F.3d 763, 770-71 (7th Cir. 2002) (plaintiff who failed to exit vehicle on command was "not actively resisting"). An officer's decision to substantially escalate the use of force in response to "passive" non-compliance is incompatible with the Seventh Circuit's excessive force doctrine. *See Phillips v. Comm. Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012). The law proscribing escalation of force on "passively" resisting individuals was well established at the time these events occurred, thus, McDonough is not entitled

6

to qualified immunity. *See e.g. Todero v. Blackwell*, 383 F. Supp. 3d 826, 833-36 (S.D. Ind. 2019). Accordingly, I will deny the parties' cross-motions for summary judgment.

## ORDER

**IT IS THEREFORE ORDERED** that Ferguson's motion for summary judgment (ECF No. 39) is **DENIED** and the defendant's motion for summary judgment (ECF No. 51) is **DENIED**. The court will attempt to recruit *pro bono* counsel for trial.

Dated in Milwaukee, Wisconsin this 13th day of August, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge